**BARLOW, Plaintiff-Appellee v. WINTERS NATIONAL BANK & TRUST COMPANY, Trustee, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 1794. Decided August 22, 1944.

458

Joseph L. Lair, Dayton, for plaintiff-appellee.

Scharrer, Scharrer & Hanaghan, Dayton, for defendant-appellee, the Winters National Bank & Trust Co.

Estabrook, Finn & McKee, Dayton, for Lillian M. Barlow, defendant-appellant.

## OPINION

By GEIGER, J.

This matter is in this court on appeal from a judgment of the Probate Court of Montgomery County upon the petition for declaratory judgment.

The petition below recites that the Winters National Bank & Trust Company is trustee under the will of Ray K. Barlow, deceased, being appointed by the Probate Court of Montgomery County; that under the last will and testament of Ray K. Barlow, deceased, he was to receive one-half of the net income

from the trust estate; that the defendant, Lillian M. Barlow was to receive the other half of the net income; that the defendant, Lillian, filed her election, electing to take under the law and not under the provisions of the last will and testament of said decedent.

The petition further recites that by the election of said Lillian M. Barlow to take under the law in pursuance to §10504-55, he is entitled to the entire proceeds of the net income of said trust; that the net income to date represents rentals received from the real estate of which the decedent died seized.

The prayer is that upon the hearing the court find that he is entitled to the entire net income from the real estate held in said trust pending the administration of the estate of Ray K. Barlow; that the court find that the defendant, Lillian M. Barlow, is not entitled to any part of said net income received from said real estate.

A number of answers and cross-petitions are filed, among them that of Lillian M. Barlow, which admits that the Bank is appointed trustee of the will. She denies that Clifford E. Barlow was to receive one-half of the net income from the trust estate, as asserted in his petition, but says that by the terms of the last will and testament, John H. Barlow, father of the decedent, was to receive from the income of the trust estate the sum of $1200.00 yearly, and that the balance was to be divided equally between Lillian M. Barlow and Clifford M. Barlow during their lifetime. She admits that she filed her election in the matter of the estate of Ray K. Barlow, electing to take under the law and not under the provision of the last will and testament of said decedent. She denies that by her election to take under the law under the provisions of §10504-55, plaintiff, Clifford E. Barlow, is entitled to the entire proceeds of the net income from said trust. On the contrary, the answering defendant avers that the defendant, Lillian M. Barlow is entitled by virtue of her election to an undivided one-half of the net estate of Ray K. Barlow and to an undivided one-half of the net income from the assets of said estate, from the date of the decedent's death to the date of distribution of said estate.

As a cross-petition, Lillian M. Barlow says that by virtue of her election to take under the law of descent and distribution pursuant to §10504-55, she became entitled to one-half of the net estate of Ray K. Barlow, deceased and to one-half of

the income therefrom until the date of distribution, whether such estate be derived from personal property or from real estate. She asks for an order of the court declaring (1) that she is the owner in law and equity of an undivided one-half of the net estate of Ray K. Barlow; (2) that she is the owner in law and equity of the undivided one-half of the income from the personal property of said estate in the hands of the executor until distribution; (3) that she is the owner of an undivided one-half of the income to the trustee from the real property assets of said estate in the hands of the trustee until distribution; (4) that a resulting trust in her favor be impressed upon one-half of the income from the real estate, and that the trustees be instructed to pay over such sum to her; (5) that the legal title to an undivided one-half of the fee simple in said real estate is vested in her by virtue of the election to take under the law of descent and distribution.

The Winters National Bank files an answer and cross-petition admitting that the plaintiff was to receive one-half of the income from the trust estate under the will of Ray K. Barlow; that the defendant, Lillian Barlow, was to receive the other one-half from said trust; that the defendant, Lillian, filed her election to take under the law and not under the provisions of the will; that the net income from said trust to date represents rentals received from real estate of which the decedent died seized.

As a cross-petition said Winters National Bank says that Ray K. Barlow died August 24, 1942, owning considerable stocks and securities and several pieces of improved and unimproved real estate; that it was appointed executor and has collected the dividends, and that it was appointed trustee under the will and as such has managed the real estate and collected the rentals; that Lillian Barlow filed her election to take by descent and distribution and not under the will of her deceased husband. It is asserted that several questions arise for the court to determine, inasmuch as the election of said Lillian to take at law changes the operation of the trust.

It is asserted that Ray K. Barlow directed that the residuary estate should be held by the trustee and the net income was to be distributed, (1) $1200.00 yearly to his father, John H. Barlow; (2) one-half of the remaining net income to his wife, Lillian M. Barlow; (3) one-half of the remaining net income to his brother, Clifford.

It is asserted that certain enumerated questions arise by

virtue of the election of the widow to take under the law.

Queries are propounded by the Bank as to what shall be the proper distribution of the income in view of the election of Lillian to take under the law. It is not necessary for us to reiterate what these questions are.

Lillian M. Barlow files an answer to the cross-petition of The Winters National Bank & Trust Company as trustee. This answer is quite lengthy and we shall not endeavor to recite its allegations in detail. She admits her election to take under the law and not under the will. She answers seriatim to several questions propounded by the Bank in which reference is made in its cross-petition as hereinafter alluded to. She asserts in her answer that the court should decide between her and the bank in the matters indicated in her answer.

She avers that she takes under the statute of intestacy by reason of her election not to take under the will, and that she is vested of the ownership of one-half of the net estate. She further avers that it is only proper to consider the estate as a whole until distribution is made, and that when such distribution is made, she should be paid one-half of the estate, and that the estate should be considered as a whole until distribution is made, and that she is then to be paid one-half of the estate.

Her answer then continues to recite her claim with reference to the estate by reason of the fact that she has elected to take under the law. She reiterates the prayer made in her answer to the petition of Clifford E. Barlow, and prays that the court direct the Bank to act solely in the capacity of executor, and not as trustee until such time as she is fully satisfied; that the appointment of the Bank as trustee be cancelled.

Clifford E. Barlow files an answer to the cross-petition of the Winters National Bank & Trust Company. In his answer, he answers the queries seriatim in which he makes assertion as to the claim of management by the bank and the distribution of the estate in view of the election of Lillian to take under the law. He asserts that under the law and the will, title to the real estate owned by the decedent passed to the trustee at the time of the probate of the will, and that neither the executor or the trustee is required to sell the real estate to pay Lillian M. Barlow one-half of the net assets. He avers that under authority granted in the last will of said decedent, the executor or trustee may sell said real estate and give deeds

therefor. Barlow prays that upon the hearing, the court find that the "defendant, Lillian M. Barlow, has no interest in the income from the real estate transferred to the trustee".

The court, on August 11, 1943, made a finding covering twenty different items, which was embodied in the final judgment under date of October 14, 1943.

Inasmuch as there are a number of findings and orders relating to the claim asserted by Lillian, which are specifically objected to in her assignment of errors, we shall not detail them as appears in the final order of the judge, but shall give proper consideration thereto in the determination thereof in the consideration of her asserted errors. None of the other parties hereto have appealed from the order or any part thereof affecting their several interests, and they have filed no assignment of errors.

### LAST WILL AND TESTAMENT OF RAY K. BARLOW.

The pertinent portion of the will is in substance; Item Second, provides that all taxes shall be paid out of the corpus of the estate. By Item Third he gave, devised and bequeathed unto his wife, Lillian M. Barlow all and singular certain specific chattel property and further "also the sum of Ten Thousand ($10,000.00) Dollars in cash, to be paid to her as soon after my decease as may be found convenient."

By Item Fourth he gives and bequeaths to his brother, Clifford, the sum of $10,000.00 to be paid to him as soon after his decease as may be found convenient.

By Item Fifth, he gives, devises and bequeaths all the real estate and residue of his estate, real, personal and mixed, unto the Winters National Bank & Trust Company, in trust for the following uses and purposes, in which we are now concerned.

A. He directs that the executor while in possession of the estate and thereafter the trustee manage the estate with power to sell at public or private sale, by good and sufficient deed of conveyance or to lease the said real estate.

D. Provides for the administration of the trust.

(1) Directs that the trustee pay from the income of the estate in convenient instalments to his father $1200.00 per year.

(2) Directs payment to his wife, Lillian M. Barlow, in convenient instalments, one-half of the remaining net income of the trust estate.

(3) Directs payment to his brother, Clifford E. Barlow, of the other one-half of the remaining net income of the trust estate.

(4) Upon the death of his wife, Lillian M. Barlow, or of his brother, Clifford, the entire income shall be paid to the survivor, subject to the father's interest.

(5) In the event of the death of the wife and the brother, leaving father surviving, the entire income to him so long as he lives.

(6) Upon the death of the wife, Lillian, the brother, Clifford, and the father, John, the entire remaining estate shall be converted into cash and shall be transferred and disposed of as directed, and the entire trust shall thereupon cease and terminate.

Specific bequests are made to charitable institutions and church organizations, and it is further provided that the entire remainder of his estate shall be equally divided into seventeen equal parts, one part to each of the enumerated beneficiaries.

The inventory and appraisement show a gross estate of $632,786.42, of which $137,700.00 consists of real estate. The appraisers set off $25,000.00 to the widow for her year's allowance and the widow's exemption of $2500.00.

Lillian M. Barlow gave notice of appeal on questions of law to this court from the final order of the Probate Court made on the 14th day of October, 1943.

The final entry embodying judgment of the court from which error is prosecuted by the widow to this court involves 20 different paragraphs, comparatively few of which concern the widow or are involved in her assignments of error. As before stated, none of the other parties to this action have filed any appeal from the judgment of the court below or any assignment of errors and as a consequence we are not called upon to examine any final judgment except those involved in the widow's assignments of errors. Some of these paragraphs we will state in detail and others, merely epitomize.

It is ordered, adjudged and decreed that:

(1) The widow is entitled to one-half of the net estate remaining after deduction of the widow's exemption, year's allowance, debts of the estate and costs of administration.

(2) The election of the widow not to take under the will does not make the will inoperative as to remaining provisions. Such election only affects quantum of the estate which may pass thereunder; that the provision of the will operates in the same manner as if the surviving spouse had died. (This relates to acceleration).

(3) The interest which such widow takes in the assets of said estate is not that interest which is taken by a surviving spouse if the decedent dies intestate; that such spouse does not take a fee simple in an undivided one-half of the real estate; that the interest which she takes is in the nature of a distributive share which under the statute is made a charge on all the assets of said estate.

(4) Not involved in the assignment of errors.

(5) The personal estate goes to the executor for the purpose of paying debts, and the income received from a personal estate before distribution goes to the executor and becomes a part of the estate and finally becomes a part of the net estate. .

(6) The title of the real estate upon the death of the testator descends to his devisee under his will; that the rents and profits are not assets of the estate and do not go to the executor but to the devisee.

(7) Where the testator devises real estate to a trustee upon the appointment of the trustee, his title relates back to the date of the death of the testator and such trustee is entitled to collect rents and profits from said real estate after the death of the testator, but such rents and profits do not become a part of the net estate in determining the widow's share.

(8) The income from the personal property received by the executor becomes a part of the net assets.

(9) The election of the widow does not in any way affect the payment of the $10,000.00 legacy to the brother of the testator, but does deprive the widow of the right to receive the personal allowance and legacy given her under Item 3.

(10) The election of the widow does not deprive the father of his right to receive $1200.00 yearly. The trustee is required to pay this yearly income to the father beginning at the date of the death of the testator and the same is charged to the trust estate.

(11) The widow's share is determined on the basis of appraised value. If the personal estate is insufficient to pay the widow's share the real estate must be sold to pay same.

(12) Does not involve the matter at issue before us.

(13) Lillian is not entitled to any part of the income of the trust and because of her election, Clifford takes an accelerated remainder and is entitled to the entire income of the trust, subject to the burden for the payment of $1200.00 yearly to the father.

(14) No part of the personal estate should be distributed to the trust until the full share of the widow is paid.

(15) Not involved.

(16) All expenses incident to the management including the repairs and taxes are charged to the income and paid by the trustee, the same order as to compensation.

(17) The note secured by mortgage on the real estate is a debt of the estate to be paid out of the personal estate which includes income from the personal estate prior to distribution and its payment has the effect of reducing the net estate.

(18) It is the duty of the executor to pay income tax on the personal estate, the same chargeable to the entire estate before distribution to the widow.

(19) Included in the debts of the estate are the inheritance taxes.

It is ordered that the executor and trustees, the Bank, proceed with the administration of the within estate in pursuance of the above judgment.

## ASSIGNMENT OF ERRORS.

In this court, the widow filed her assignment of errors on November 20, 1943, asserting:

"1. The finding and judgment of said Probate Court are contrary to law.

2. The finding and judgment of said Probate Court are contrary to law and the evidence.

3. The said Probate Court erred in overruling appellant's motion for a new trial to which appellant duly excepted.

4. The judgment of said Probate Court was .given for said Clifford E. Barlow and said The Winters National Bank & Trust Company, as Trustee of the Ray K. Barlow Trust, when it ought to have been given for said Lillian M. Barlow, appellant.

5. The said Probate Court erred in construing **Ohio General Code, Section 10504-55** and **Ohio General Code, Section 10503-4** so as to deny to appellant, Lillian M. Barlow, one-half the income from the real property of her deceased husband, Ray K. Barlow.

6. Other errors manifest on the face of the record."

Lillian prays that the judgment of the Probate Court may be reversed.

### THE STATUTES

The pertinent section of the statutes is §10504-55 GC, under a heading "Election by Surviving Spouse". This section provides that after the probate of the will and other proceedings, the court shall issue a citation to the surviving spouse to elect whether to take under the will or under the statute of descent and distribution, but in the event of the election to take under the statute of descent and distribution, said spouse shall take not to exceed **one-half** of the net estate.

The interpretation of this section by the Supreme Court may be found in two cases, to-wit: **Miller v Miller, Admr., 129 Oh St 230, Davidson v Trust Company, 129 Oh St 418.**

Both of these cases are of interest and of such importance that they should be read rather than reliance be placed on an attempted interpretation.

In the first case cited, second syllabus:

"2. The phrase 'under the statute of descent and distribution' as used in §§10504-55 and **10504-60, GC,** does not mean that the surviving spouse is actually placed within the operation of the statute of descent and distribution (**§10503-4 GC**), but such phrase is used as merely definitive or descriptive of the share to be taken by the surviving spouse within a limitation of not to exceed one-half of the estate."

In the last cited case, the first case is affirmed, and it is further held:

"2. The widow's year's allowance and the allowance given her under **§10509-54 GC,** are a debt and preferred claim, respectively, against her deceased husband's estate, deductible before a determination of the share of the estate to be taken by the widow 'under the statute of descent and distribution.'
3. Where one is bequeathed the income from certain property for life, he is entitled to such income from the death of the testator, in the absence of anything in the will to the contrary."

In our first examination of the opinion of the trial court as published in Ohio Law Reporter and Weekly Law Bulletin of December 6, 1943, we were of the impression that the court below was correct in his conclusion in view of the two pronouncements of the Supreme Court in the two cases last above cited. However, upon further and more mature consideration

we arrive at the conclusion that the judgment of the court below was erroneous in certain particulars affecting the rights of the widow and involved in her assignment of errors.

We shall not attempt the task of a detailed examination of the two controlling cases, **Miller v Miller, 120 Oh St 230,** and **Davidson v Trust Co., 129 Oh St 418.** Syllabi 2 and 3 of the Miller case are definitely to the effect that the surviving spouse, by the phrase used in §§10504-55 and 10504-60, is not placed within the operation of §10503-4, but that the phrase used in such section, "under the statute of descent and distribution" is used merely definitive or descriptive of the share to be taken within the limitation of one-half of the estate. Syllabus 3 is to the effect that the actual taking is under §§10504-55 and **10504-60;** §10503-5 relating to the "descent" has no application.

The first syllabus of the Davidson case is to the effect that the trust is operative as to the **remaining half of the estate.** * * *

While we have some difficulty in determining in spite of the statement in 3rd syllabus of Miller v Miller, by what course the estate passed from the decedent to his spouse after she had exercised her right under §10504-55 to decline to take under the will, there is a definite provision of §10504-55 that "in the event of the election to take under the statute of descent and distribution such spouse shall take not to exceed one-half of the net estate." The estate in the instant case consists of a major part of personal property but a substantial part of real estate which is placed under the control of the Bank for management. It appears to us quite clear that if the widow is obliged to submit her half of the estate to the control of trustees, she does not in fact receive a half of the estate. If one-half of the real estate came to her in fee she would have a right to its unencumbered possession except for the payment of debts of which her widow's allowance and allowance under §10509-54 are preferred (Syllabus 3, Davidson v Trust Co.), without the control of any trustee and we cannot detect any reason why her right to take one-half of the net estate deprives her of the right to take one-half of the real estate. She does not rely upon the provisions of the will, as she rejected them. **Davidson v Trust Co., pages 425, 426, 427.** It seems to us that it must follow that if she takes under the provision of any section that operates to give her an interest in her hus-

band's estate after her rejection of the will, she takes it as if her husband had died intestate as she would have done under the provisions of §10504-4, ¶1, except that under the restrictive §10504-55 she takes only a half of the estate instead of three-fourths as provided by §10503-4.

The court below has held in paragraphs 9 and 10 of the final entry that the election of the widow does not affect the payment of the special legacies to her brother-in-law and father-in-law. As a further discrimination against the widow the court holds that her election does deprive her of her legacy of $10,000.00 and of the personal articles bequeathed to her by the will. We can readily understand the logic of depriving her of her legacy by virtue of the fact that she refused to accept under the will, but we cannot follow when it is held that the same privilege to refuse to accept under the will which deprived her of her legacy and bequest should not deprive her brother-in-law and father-in-law of the legacies to them, paid out of or in diminution of her half interest. In other words, we cannot understand why the will should operate in behalf of the other legatees and their legacies be paid in part out of her half interest.

In Paragraph 13 the court holds that the widow is not entitled to any part of the income of the trust, but because of her election her brother-in-law, Clifford E. Barlow, takes an accelerated remainder in the trust estate and is entitled to the entire income of said trust. We readily understand that she is not entitled to any part of the trust estate provided said trust estate consists of the half which she is not permitted to take under the section of the statute, but we do not understand why the half which she does take should remain in the control of the trustee and the income thereof paid by acceleration to her brother-in-law, which would necessarily be in derogation of her rights under the statute which designates her interest as one-half of the estate.

We have no objection, as stated before, to the acceleration of the payment to the brother-in-law, provided it is an acceleration of the payment of an income out of the half of the estate in which the widow is no longer concerned, by reason of her rejection. However, as to acceleration we would refer to the two cases of **Holdren v Holdren, 78 Oh St 276**, and **Stephens, Exr., v Stephens, 121 Oh St 490.** We may observe in passing that three judges dissented from the judgment in the Davidson case for the reason that in their opinion these cases are controlled by the Holdren and Stephens cases above cited.

There are many other paragraphs in the final entry which might invite our attention, except that they are not involved in the assignment of errors filed by the widow.

Paragraphs 1, 2, 3 and 4 of the assignment are none of them sufficiently definite for us to determine whether or not the court committed error as asserted in the said assignments. In the 5th assignment, the widow does not claim that there was error in denying her one-half interest in the real estate in fee simple, but simply claims that there is error construing the General Code, §§10504-55 and 10503-4, so as to deny to the appellant one-half of the **income** from the real property of her deceased husband. We being of the opinion that she was entitled to one-half of the real estate in fee, must of course hold that she is entitled to one-half of the income, if the trustees continue to manage the estate.

See also **Fee v Linthicum, 26 Abs 590; Miller v Miller, 49 Oh Ap 220** (Same case decided by Supreme Court, **129 Oh St 230**). One of these cases holds that the real estate taken by the dissenting spouse is subject to partition and another holds that it is not. **Shearn, Appellee v Shearn, 14 OO 262; Weller v Weller, 32 N. P. (N. S.), 329; Bank v Linn, 22 OO 195; Davis v Warner, 47 Oh Ap 495.**

I am in agreement with the concurring opinion of Judge Hornbeck. We are of the opinion that the court erred in the following paragraphs of his final order, 3; 7; 9; 13.

As modified, the judgment of the Probate Court will be affirmed.

BARNES, P. J., not participating.

HORNBECK, J., concurring:

I concur in the judgment to the extent and for the reasons herein stated.

I recognize that the trial judge in the Miller case has some inferential support for his well considered opinion.

It is common knowledge among our profession that the new Probate Code guarded, broadened and increased the rights of a widow in the property of her deceased husband, and its letter and spirit require that it be given any reasonable interpretation which is favorable to her.

If the widow's interest in the situation here presented is to be measured in money only then an estate consisting of little

money and several tracts of real estate would require that the real estate be sold. This, in many instances, would be tragic in view of the present disparity between interest which can be secured on money and the increment to be realized from real estate.

In our present economic condition, a denial to the widow of any fixed interest in realty because of her election not to take under her husband's will affects her to her marked pecuniary disadvantage and instead of effectuating the manifest broad purpose of the Code, thwarts it.

The term "net estate", as employed in §10504-55 GC, has no limitation in the section which would restrict the widow to a distributive share measured in money.

Dower, with few exceptions, is abolished by the new code but the right which the widow now enjoys takes the place, in part, of her dower right under the former statutes. Her dower was a vested estate in realty and before she should be denied such interest in the real estate of her deceased consort under §10504-55 GC, that interpretation should be unmistakably re-required by the section. I can not so read it.

The Probate Code Committee of the Ohio State Bar Association in its comment respecting the dower section, as first enacted, §10502-1 GC, said, in part:

"Under the section now proposed (§10502-1 GC) the following would be the net result:

(a) Under the proposed statute of Descent and Distribution the surviving spouse will receive **one third outright of all real and personal** property owned by decedent spouse at date of death (one half if there is only one child). This will take the place of **vested dower.** (Emphasis ours.)

The former section relating to election by the widow, §10566 GC, provided that she should elect

"Whether to take such provision (as made for her in the will of her deceased consort) or **to be endowed of the lands of the deceased consort** and take the distributive share of the personal estate." (Emphasis ours.)

If the settled legislative policy, as manifested by the foregoing comment and quoted section of the code, is to be completely changed such purpose should clearly appear.

Under the new act, the provision of §10504-55 GC is:

"to elect whether to take under the will or under the statute of descent and distribution.  (Emphasis ours.)

The Miller case determined the effect of §10503-5 GC, as then effective, on the rights of the parties to money which the decedent had received from her husband's estate by reason of a presumed election to take under the statute of descent and distribution, by virtue of §10504-60 GC.  The Supreme Court held that the surviving spouse was not by her election placed "within the statute of descent and distribution," §10503-4 GC, such phrase being merely descriptive of the share which she was to take but that she received her interest in her husband's estate under §§10504-55 and 10504-60 GC.

Neither the Miller nor the Davidson case decides what quality of interest or estate in real property of her deceased husband who died testate, a widow takes who has made an election to take under the statute of descent and distribution. The Miller case decides what estate the widow has not but it does not determine what estate she has.  She is taken out of §10503-4 GC; she is placed under §10504-55 GC, but the opinion goes no further and certainly does not settle the question here presented.

Admittedly the Miller and the Davidson cases are disconcerting but a development in legislation since these decisions, and probably influenced by them, is most significant and, in my opinion, decisive of the principal question presented on this appeal, viz; the quality of the estate, real and personal, which the widow is to receive.  I refer to §10503-5, 114 O. L. 340, effective August 22, 1941, a year before the death of the testator in the instant case which, as amended, reads:

"When a relict of a deceased husband or wife dies intestate and without issue, possessed of identical real estate or personal property which came to such relict from any deceased spouse by deed of gift, devise, bequest or descent or by virtue of an election to take under the statute of descent and distribution, then such estate, real and personal, except one-half thereof which shall pass to and invest in the surviving spouse, if any, of such relict, shall pass to and invest in the children of the deceased spouse from whom such real estate or personal prop-

erty came or their lineal descendants, per stirpes * * *." (Emphasis ours.)

The emphasized language "identical" instead of "any" qualifying "real estate" and beginning "by virtue of an election to take" and ending with "distribution" are the amendments to the section. The section as now framed discloses other and further important operative facts. It now refers not only to real estate or personal property which came from the deceased spouse, as before provided in the section, but also which came to the widow by virtue of her election to take under the law. The statute now includes any and every method of devolution by which the widow can take the real property and every manner by which she may receive the personal property from her deceased consort. The conclusion is inescapable that the section now contemplates that a relict of a deceased husband who died testate, by her election to take under the statute of descent and distribution §10504-55 GC, does take real estate and not the appraised value thereof in money. Such construction is mandatory if the widow is to have any estate in real property upon which the amendments to the section can operate.

I am, therefore, of the opinion that in the light of the narrow questions decided in the Miller and Davidson cases and especially in view of the amendment to §10504-55 GC, the widow, the appellant, takes one-half of the net estate, real and personal, of her deceased husband and that she has a vested interest in fee in the real estate.